UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-147-GWU

JOHN ROBERT PHELPS, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

1

09-147  John Robert Phelps

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-147   John Robert Phelps

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

09-147   John Robert Phelps

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, John Robert Phelps, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of obesity, hypertension, a history of leukocytosis, a depressive disorder, and borderline intellectual functioning. (Tr. 10). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Phelps retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 10-13). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 26, unskilled work experience, and an inability to read, could perform any jobs if he were limited to "medium" level exertion, and also had the following non-exertional restrictions. (Tr. 34). He: (1) could not work around hazardous machinery; (2) would be limited to low stress jobs involving simple one- and two-step instructions; (3) had a "limited but satisfactory" ability to deal with stress and deal with coworkers; and (4) had a "seriously limited but not precluded" ability to interact with supervisors. (Id.). The VE responded that there were jobs

7

such as cleaner and janitor, food preparation worker, hand packer, and production worker which the plaintiff could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.). If the non-exertional restrictions were modified to include a "severely limited but not precluded" ability to deal with coworkers and deal with work stresses, the VE testified that the jobs would still be available. (Tr. 34-5). On the other hand, if the plaintiff's testimony that his fatigue made it difficult for him to get through a day and he would miss more than two days per month of work were to be accepted, the VE testified that there were no jobs he could perform. (Tr. 35).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Phelps alleged disability due to lack of education and difficulty working around other people. (Tr. 129). He testified that he had attended school until eighth grade in Special Education, but had to have help with reading letters or newspapers. (Tr. 26). He testified that his weight was 400 pounds at a height of six feet, and he could not work because of knee and back pain, although he had never had these problems evaluated. (Tr. 27-8). However, he had been able to perform his last job as a lumber stacker and had quit because he could not get along with his uncle, who was also an employee. (Tr. 24). He was on medication for nerves

8

and acid reflux and his wife told him that he would stop breathing in his sleep, but had not had the problem evaluated at the time of the hearing. (Tr. 28). He was also having difficulty with his white blood count. (Tr. 29).

The medical evidence confirms that Mr. Phelps was obese and that he was evaluated for leukocytosis; however, Dr. Bachar Kassem, his treating hematologist, found no evidence of leukemia or myeloproliferative disorder. (Tr. 269-72). In October, 2007, Dr. Kassem offered the plaintiff a bone marrow biopsy because his white blood cell count was going up, but there is no indication that the testing was performed before the February 27, 2008 administrative decision. (Tr. 296-7). Mr. Phelps was also diagnosed with obstructive sleep apnea after a polysonogram in October, 2007, and advised to return for "CPAP titration" (Tr. 302), but there was no evidence of follow-up in this case, either. The plaintiff's acid reflux appeared to improve with medication. (Tr. 200).

No source, whether examining or non-examining, provided any physical restrictions or indicated that the plaintiff was unable to work. Therefore, the ALJ's restriction to medium level work is supported by substantial evidence.[1]

---

[1] Despite finding that the plaintiff's obesity was a "severe" impairment, the ALJ did not specifically consider the effects of obesity in combination with other functional limitations as set out in Social Security Ruling 02-01p (2002). In the present case, however, with no medical source indicating functional restrictions due to any cause, the error was harmless.

The only mental status evaluation in the transcript was conducted by Psychologist Greg Lynch in November, 2006. (Tr. 207). Mr. Phelps gave a history of having received Social Security benefits until age 18, and of being treated with both Ritalin and Zoloft in the past. (Tr. 207-8). Despite having been enrolled in Special Education, he had some failing grades. (Tr. 208). His primary recreation was watching television, having performed no work since 2005. (Tr. 208-9). Dr. Lynch described Mr. Phelps as being preoccupied and somewhat distractable, and indicated that he was minimally cooperative with the evaluation. (Tr. 209). Testing showed a verbal IQ of 71, a performance IQ of 58, and a full scale IQ of 63, but due to the poor effort on many of the test items, Dr. Lynch opined that the results were a significant underestimate of his true ability. (Tr. 210-11). His third grade reading skills also were below what was expected. (Tr. 211). Dr. Lynch listed a diagnostic impression of a depressive disorder and estimated borderline intellectual functioning, with a current Global Assessment of Functioning (GAF) score of 55 (Tr. 211-5). A GAF score in this range reflects moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. In terms of specific functional restrictions, Dr. Lynch felt that Mr. Phelps would be moderately limited in his ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision, coworkers, and work pressures in a work setting, and would have slight to moderate limitations in his ability to sustain

09-147   John Robert Phelps

attention and concentration toward the performance of simple, repetitive tasks. (Tr. 212).

State agency Psychologists Larry Freudenberger and Laura Cutler reviewed the evidence and found that Mr. Phelps would be moderately limited in his ability to understand, remember, and carry out detailed instructions, interact appropriately with the general public, accept instructions from and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. (Tr. 214-16, 249-51).

Although the plaintiff argues on appeal that the ALJ did not properly evaluate his mental impairments, the ALJ's conclusion that the IQ scores obtained by Dr. Lynch were invalid is supported by substantial evidence. The plaintiff's reported lack of effort led the psychologist to conclude that the scores were a significant underestimate, and he did not diagnose mental retardation. Therefore, it was reasonable to conclude that the plaintiff did not meet the requirements of the Commissioner's Listing of Impairment 12.05C or D, concerning mental retardation. The ALJ also reasonably pointed out that no school records or other evidence was submitted to establish the plaintiff's level of functioning prior to age 22. (Tr. 15). The psychological restrictions in the hypothetical question, particularly in the second alternative hypothetical question, were a reasonable reflection of the findings of Dr. Lynch and of the state agency reviewers. The plaintiff having established no

09-147   John Robert Phelps

greater restrictions, the VE's testimony carried the Commissioner's burden of showing that there were jobs existing in the economy which the plaintiff can perform.

The decision will be affirmed.

This the 21st day of January, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**